IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



FILED

FEB 1 9 2020

Clerk, U S District Court
District Of Montana
Billings

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 18-118-BLG-SPW |
| Plaintiff, | |
| vs. | OPINION AND ORDER |
| DARRELL FRANKLIN HOLLIDAY, | |
| Defendant. | |

Before the Court is Defendant Darrell Franklin Holliday's objection to the Presentence Investigation Report's imposition of the Career Offender enhancement under United States Sentencing Guideline § 4B1.1.

I.  **Background**

On July 30, 2019, Holliday was found guilty by bench trial of Possession with Intent to Distribute Methamphetamine and two counts of Distribution of Methamphetamine. (Doc. 54). The Court set a sentencing hearing and ordered a Presentence Investigation Report to be prepared. (Docs. 57, 67, and 72).

While compiling Holliday's criminal history, the Presentence Investigation Report author discovered Holliday had a prior conviction for Criminal Distribution of Dangerous Drugs in Montana district court and a prior conviction for Distribution of Methamphetamine in United States district court. The Presentence

1

Investigation Report author determined the two prior convictions were "controlled substance offenses" under USSG § 4B1.1(a) and applied the career offender enhancement to Holliday. The enhancement increased Holliday's offense level from a 24 to a 34, and his criminal history from a III to a VI, resulting in a guideline range of 262-327 months.

Holliday objected to the Presentence Investigation Report's conclusion that his conviction for Criminal Distribution of Dangerous Drugs in Montana district court was a "controlled substance offense" under USSG § 4B1.1(a).

## II. Analysis

A defendant is a career offender if, assuming other criteria are met, the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. USSG § 4B1.1(a). A "controlled substance offense" means:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense . . . [including] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses.

USSG § 4B1.2(b), § 4B1.2 app. n. 1. Holliday was convicted under Mont. Code Ann. § 45-9-101, which provides:

> a person commits the offense of criminal distribution of dangerous drugs if the person sells, barters, exchanges, gives away, or offers to

sell, barter, exchange, or give away any dangerous drug, as defined in 50-32-101.

To determine whether § 45-9-101 is a "controlled substance offense," the Court applies the categorical approach. *United States v. Leal-Vega*, 680 F.3d 1160, 1163 (9th Cir. 2012) (citing *Taylor v. United States*, 495 U.S. 575 (1990)). Under the categorical approach, the Court compares the elements of § 45-9-101 with USSG § 4B1.2(b)'s definition of a "controlled substance offense" to determine whether § 45-9-101 criminalizes a broader range of conduct than the federal definition captures. *Leal-Vega*, 680 F.3d at 1164. If § 45-9-101's elements are the same as or narrower than the federal definition, the statute is a categorical fit and the sentencing enhancement applies. *Leal-Vega*, 680 F.3d at 1164.

The parties agree § 45-9-101 is narrower than or equal to USSG § 4B1.2(b)'s definition of a "controlled substance offense" in every respect but one. The parties dispute whether § 45-9-101's definition of "dangerous drug" is narrower than or equal to § 4B1.2(b)'s definition of "controlled substance." The disagreement is over what "controlled substance" means, as the term is undefined in § 4B1.2(b). The defendant argues "controlled substance" means those substances listed in the Controlled Substances Act (CSA), 21 U.S.C. § 801 *et seq*. The government contends "controlled substance" means the substances listed in the CSA as updated and revised by the Code of Federal Regulations (C.F.R.).

In *Leal-Vega*, the Ninth Circuit confronted a similar disagreement. There, the defendant and the government disputed the meaning of "controlled substance" under a different but similar guideline to USSG § 4B1.2(b). The government argued "controlled substance" meant generically any substance controlled by law, whereas the defendant argued it meant those substances listed in the CSA. The Ninth Circuit agreed with the defendant and went on to analyze whether the controlled substance at issue in the state statute was listed in the CSA. *Leal-Vega*, 680 F.3d at 1164-1167.

*Leal-Vega* does not resolve the dispute here, however, because the Ninth Circuit was not asked whether "controlled substance" was limited to strictly the definitions in the CSA or if instead the C.F.R. controls the CSA. In *Leal-Vega*, unlike here, it apparently made no difference. The parties' disagreement thus takes *Leal-Vega* one step further and asks that question. The CSA's text and relevant case law indicate the government's position is correct.

The CSA's text plainly lays out Congress's intent that the C.F.R. would control the CSA. Passed in 1970, the CSA established five classifications of controlled substances, known as Schedule I, II, III, IV, and V. 21 U.S.C. § 812(a). It further provided criteria for each schedule and an initial classification for many substances then known. 21 U.S.C. § 812(a). Because Congress recognized the appropriate classification of substances would change over time, the CSA required

the schedules to be updated and republished on an annual basis. 21 U.S.C. § 812(a). Rather than amending the CSA itself every year, however, Congress delegated the duty to update and/or amend the schedules to the Attorney General, and directed the revisions to be published in the C.F.R, not the CSA. 21 U.S.C. 812(c), 812(c) n. 1.

The Ninth Circuit has not explicitly recognized the CSA's delegation of authority to the C.F.R. as controlling for categorical analysis purposes, but it has at least assumed that's the case. In *Coronado v. Holder*, while conducting a categorical analysis of a California statute, the Ninth Circuit explained the CSA is "revised annually in [the C.F.R.]," and later looked to the C.F.R. to determine if a substance controlled by California was also controlled by the federal government. 759 F.3d 977, 983, 983 n. 1 (9th Cir. 2014). It made the same assumption in *Laffont-Irigoyen v. Gonzales*, where it looked at the C.F.R. to determine whether a substance controlled by Alaska was also controlled by the federal government. 187 Fed.Appx. 717, 718-719 (9th Cir. 2006).

The Court finds the text of the CSA and the relevant case law persuasive and holds for purposes of defining "controlled substance" under § 4B1.2(b), the C.F.R. controls the CSA.

"Controlled substance," means "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21

U.S.C. § 802; C.F.R. § 1308.02. "Dangerous drug," means "a drug, substance, or immediate precursor in Schedules I through V set forth in Title 50, chapter 32, part 2." Mont. Code Ann. § 50-32-101(6).

The categorical approach requires the Court to compare these two definitions to see if they are a match—a lengthy endeavor given each definition relies on subsections of classifications which contain hundreds of substances and compounds. *Coronado*, 759 F.3d at 983. Mercifully, the parties agree Montana's schedules are not an exact match with the federal schedules. When the state statute is not a match with or is narrower than the federal definition, the Court must consider whether it may use the modified categorical approach to determine whether the statute and federal definition match. *Coronado*, 759 F.3d at 984. The modified categorical approach may be used only when the statute is divisible. *Coronado*, 759 F.3d at 984. A statute is divisible when it lists several disjunctive items that comprise alternative elements, effectively creating several separate crimes rather than alternate means of committing the same crime. *Diego v. Sessions*, 857 F.3d 1005, 1009 (9th Cir. 2017).

In *Coronado*, the Ninth Circuit held a California statute which criminalized possession of a controlled substance was a divisible statute because it identified hundreds of controlled substances by reference to the California schedules and criminalized possession of any of those substances. The Ninth Circuit concluded

the possession of each substance was a different crime rather than an alternative means of committing the same crime. *Coronado*, 759 F.3d at 984-985. *Coronado* binds the Court to the same conclusion here because the Montana statute is virtually the same as the California statute.

Because the statute is divisible, the Court may apply the modified categorical approach. The modified categorical approach allows the Court to consult a limited number of underlying documents from the state conviction, such as the charging documents or jury instructions, to determine which specific subsection of the statute the defendant was convicted under. *Coronado*, 759 F.3d at 985.

The underlying documents establish Holliday was convicted for distributing cocaine as defined in Mont. Code Ann. § 50-32-224(1)(d). (Doc. 76-1 at 1-6). § 50-32-224(1)(d) defines cocaine as:

> Coca leaves and any salt, compound, derivative, or preparation of coca leaves, including cocaine and ecgonine and their salts, isomers, derivates, and salts of isomers, and derivatives, and any salt, compound, derivative, or preparation of them that is chemically equivalent or identical with any of these substances, except that these substances do not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine.

The C.F.R. defines cocaine as:

> Coca leaves and any salt, compound, derivative or preparation of coca leaves (including cocaine and ecgonine and their salts, isomers, derivatives and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically

7

equivalent or identical with any of these substances, except that the substances shall not include (i) decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine; or (ii) Ioflupane.

C.F.R. § 1308.12(b)(4). The two definitions are identical bar some minor and immaterial differences in form or phrasing, with the exception that the federal statute also excludes Ioflupane. However, Ioflupane was not an exception in the C.F.R. until 2015, well after Holliday's state conviction. § 45-9-101 is therefore categorically a "controlled substance offense" under § 4B1.2(b) with respect to cocaine. The career offender enhancement applies and Holliday's objection is overruled.

DATED this 19th day of February, 2020.

SUSAN P. WATTERS
United States District Judge