

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

FILED

OCT 2 1 2020

Clerk, U S District Court
District Of Montana
Billings

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DARRELL FRANKLIN HOLLIDAY,<br><br>Defendant. | Cause No. CR 18-118-BLG-SPW<br><br><br>ORDER |

Defendant Holliday moves the Court for compassionate release under 18 U.S.C. § 3582(c)(1)(A) in light of the COVID-19 outbreak. On February 21, 2020, he was sentenced to serve 120 months in prison for federal drug offenses. *See* Judgment (Doc. 82). His projected release date is April 14, 2027. *See* Inmate Locator, www.bop.gov/inmateloc (accessed Oct. 20, 2020).

The Court notes that it lacks jurisdiction because Holliday's direct appeal is pending. *See* Notice of Appeal (Doc. 86); *United States v. Najjor*, 255 F.3d 979, 983 (9th Cir. 2001). Compassionate release should not be denied to a defendant merely because he has exercised his right to appeal. The Court will consider whether to provide an indicative ruling to the Court of Appeals. *See* Fed. R. Crim. P. 37.

1

As of October 19, 2020, three inmates and ten staff members at FMC Fort Worth, Texas, where Holliday is incarcerated, currently test positive for the virus or the disease. Six hundred ten inmates and six staff members have recovered, but 12 inmates died. *See* Interactive Map, www.bop.gov/coronavirus (accessed Oct. 20, 2020). As Fort Worth is a federal medical center, its inmate population is generally more likely to be seriously affected by the virus and disease.

After considering the sentencing factors in 18 U.S.C. § 3553(a), the Court may reduce Holliday's sentence if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i); *see also* U.S.S.G. § 1B1.13(1)(A). Any reduction must be consistent with the corresponding policy statement in the Sentencing Guidelines. *See* 28 U.S.C. § 994(a)(2)(C), (t); U.S.S.G. § 1B1.13(3) (Nov. 1, 2018).[1] A defendant's medical condition may constitute an "extraordinary and compelling reason." *See* U.S.S.G. § 1B1.13 cmt. n.1(A). Holliday must also show that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

---

[1] The Court disregards the guideline's statements requiring a motion from the Director of the Bureau of Prisons because that requirement is now "contrary to the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984); 18 U.S.C. § 3582(c)(1)(A) (authorizing court to act "upon motion of the defendant"); First Step Act of 2018, Pub. L. No. 115-391, tit. VI, § 603(b)(1), 132 Stat. 5194, 5239 (Dec. 21, 2018); *United States v. Wong*, 2 F.3d 927, 929–30 (9th Cir. 1993).

Holliday meets the first prong of the guideline.[2] He and his family experienced a terrible ordeal earlier this year. Holliday suffered COVID-related pneumonia and a lengthy hospital stay including intubation. So far as anyone knows at this point, his bout with severe illness will not permanently exempt him from contracting COVID-19 or a related disease in the future. And he appears to have several medical conditions that elevate his risk of developing severe illness if he is reinfected with SARS-CoV-2. Heart failure, *see* Medical Records (Doc. 92-1) at 43, and obesity, *see id.* at 5, *will* increase a person's risk of developing severe illness. Other conditions, including hypertension, type I diabetes, *see* Medical Records (Doc. 92-1) at 1, and asthma, if it is moderate to severe, *may* increase a person's risk. *See* Centers for Disease Control, *People with Certain Medical Conditions*, https://www.cdc. gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (accessed Oct. 20, 2020).

The United States asserts that Holliday is able to provide a reasonable level of self-care. *See* U.S. Resp. (Doc. 95) at 8–10; Resp. Ex. (Doc. 95-1) at 1. But even if an inmate can provide self-care when he is not infected with SARS-CoV-2,

---

[2] Holliday presents a legal question involving medical evidence. An affidavit from someone qualified to understand his individual medical conditions and explain how they relate them to COVID-19 would be helpful. Medical records are frequently more illuminating than a defendant's description of his medical condition, but the Court is not an expert at interpreting medical records.

the conditions identified by the CDC will "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," U.S.S.G. § 1B1.13 cmt. n.1(A), if the inmate is exposed to the virus or incurs the disease. Further, a prisoner who has Holliday's conditions cannot choose for himself to limit his interactions with fellow inmates or staff or take other protective or hygienic measures against the virus. Nor is it realistic for courts to condition relief on the existence of an emergency at the defendant's facility. When the virus is active in a facility, it is already too late for compassionate release. Even releasees who appear to be healthy must be quarantined to avoid placing the community at risk, and the releasee is of course more likely to become ill when the virus has already entered a facility. *Cf.* U.S.S.G. § 1B1.13(2). For these reasons, Holliday's medical conditions are extraordinary and compelling facts that could warrant his release.

But Holliday's medical conditions alone do not persuade the Court that release is appropriate. Although the Court varied downward from the career offender enhancement, *see* Statement of Reasons (Doc. 83) at 4 § VIII, it still found that a sentence of 120 months was sufficient, but not greater than necessary, to meet the objectives of 18 U.S.C. § 3553(a). At this point, Holliday has been incarcerated for about two years. Even if the career offender enhancement had not

4

applied, his advisory guideline range would have been 63 to 78 months—well over two years. *See* Statement of Reasons at 4 § VIII.

Holliday's record includes four felony drug-related offenses and numerous misdemeanor convictions, all involving some evidence of drug use or "intoxication." *See* Presentence Report ¶¶ 35–44; *see also id.* ¶¶ 49–55.[3] Despite attempts to address his serious substance abuse problem, *see, e.g., id.* ¶¶ 82–83, 85, 87–89, and even when his freedom depended on his doing so, *see, e.g., id.* ¶ 44 paras. 2–4, he continued to use and traffic, feeding the same addiction in others that he cannot stop in himself. His history plainly demonstrates that he will use and traffic in drugs when he is released. He might find ways to use his time in prison to his advantage, but unless and until he learns to live within the law, he is a danger to his community. *See* U.S.S.G. § 1B1.13(2).

Holliday's medical conditions, his emotionally and physically painful hospitalization, the fear it might be repeated, and the addiction that landed him in prison all warrant compassion. He did nothing to deserve these things, yet he must deal with them. But his way of dealing with his addiction brought harm to others. His medical conditions and the pandemic do not warrant his release.

---

[3] An arrest on July 20, 1989, is omitted here as the description of events does not support probable cause for arrest. *See* Presentence Report ¶ 48.

Accordingly, IT IS ORDERED that Holliday's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (Doc. 91) is DISMISSED for lack of jurisdiction and, under Fed. R. App. P. 37, would be DENIED.

DATED this 21st day of October, 2020.

Susan P. Watters
United States District Court